# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> DEMETRIUS RUSHIN, <br><br> Defendant. | CRIMINAL ACTION FILE <br><br> NO. 1:18-CR-0004-MHC-LTW |

## ORDER

This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Linda T. Walker [Doc. 32] recommending that Defendant's Motion to Suppress [Doc. 18] and Supplemented Motion to Suppress [Doc. 27] be denied. The Order for Service of the R&R [Doc. 33] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. Defendant has filed his objections to the R&R [Doc. 34] ("Def.'s Objs.").

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically

identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

In his motions, Defendant asserts that statements he made to postal inspectors about his involvement in a October 3, 2013, armed robbery of a postal worker in Clarkston, Georgia should be suppressed because they were coerced based upon the postal inspectors' threats to prosecute his girlfriend, Kennsha Wilcox ("Wilcox"). In recommending that the motions to suppress be denied, the

Magistrate Judge considered the totality of the circumstances involving Defendant's inculpatory statements to the postal inspectors and found that the inspectors did not coerce, trick, or threaten Defendant into making those statements. R&R at 12-21.

In his objections, Defendant argues that the Magistrate Judge ignored the evidence which indicates that Inspector Jeffrey Adkins ("Adkins") falsely told Defendant that Wilcox was a suspect in the armed robbery knowing that there was no probable cause to prosecute her, leading Defendant to make self-incriminating statements in order to exonerate Wilcox. See generally Pl.'s Objs. However, a review of the totality of the circumstances in this case reveals that the Magistrate Judge did not err in concluding that Defendant's statements were made knowingly and voluntarily of his own free will and not in response to any improper threat or coercion.

Although it is undisputed that Defendant was not in custody when making the challenged statements, the statements may still be inadmissible if they were involuntary. See United States v. Lall, 607 F.3d 1277, 1285 (11th Cir. 2010) ("Even if [the defendant] was not in custody in the technical sense (and thus

Miranda warnings were not required[1]), we would still be required to address the voluntariness of his confession."). A confession is involuntary, and thus inadmissible, "only when the [totality of] the circumstances show that 'coercive police activity' overcame the defendant's free will." Arvelo v. Sec'y Fla. Dept. of Corrs., 687 F. App'x 901 (11th Cir. 2017) (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)). In determining voluntariness, the Court must assess "the totality of the circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

> We focus our voluntariness inquiry on whether the defendant was coerced by the government into making the statement: The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. The district court must consider the totality of the circumstances in assessing whether police conduct was causally related to the confession. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. Absent police conduct causally related to the confession, there is . . . no basis for concluding that any state actor has deprived a criminal defendant of due process of law.

---

[1] In fact, Miranda warnings actually were given to Defendant prior to his incriminating statements.

United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) (internal citations and quotation marks omitted). See also Connelly, 479 U.S. at 163 n.1 (noting that coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession). Ultimately, the Court must determine "whether a statement was made freely or whether the defendant's 'will has been overborne and his capacity for self-determination has been critically impaired.'" Devier v. Zant, 3 F.3d 1445, 1455-56 (11th Cir. 1993) (quoting Culombe v. Connecticutt, 367 U.S. 568, 602 (1961)).

The totality of circumstances in this case show that Defendant's statements to the postal inspectors were made in the absence of any improper threat, coercion, or inducement. The chronology of events shows the following:

- On October 3, 2013, an armed robbery occurred at the Clarkston, Georgia post office. Tr. of Evidentiary Hr'g [Doc. 26] ("Tr.") at 4.

- Wilcox worked at the post office and both she and Defendant were interviewed by federal agents, but no arrests were made at that time. Id. at 5-6.

- Another attempted armed robbery took place at the same post office in January 2017. Id. at 7.

- Prior to the 2017 robbery, Inspector Adkins received information from sources that Wilcox may have planned the 2013 robbery and that Defendant was the lookout. Tr. at 8, 29.

- On January 18, 2017, Adkins met with Wilcox, who gave a voluntary statement denying involvement in the 2013 robbery but indicating that she learned that Defendant acted as a lookout and recruited a friend who conducted that robbery. Id. at 8.

- After learning that Wilcox and Defendant were still together and that Wilcox was going to tell Defendant that she "gave him up," Inspector Adkins asked Wilcox if Defendant would be willing to give a statement, and Wilcox responded, "yeah, he'll come in and say – tell the truth that he did it, and I had nothing to do with it . . . ." Id. at 9-10.

- On January 19, 2017, Wilcox informed Inspector Adkins that she told Defendant about her statement to the agents, that Defendant acknowledged that he would give a statement, and that Adkins could come to their residence the next day to take Defendant's statement. Id. at 10-11.

6

- On January 20, 2017, Adkins and another postal inspector went to the residence shared by Defendant and Wilcox. Adkins asked Defendant whether he wanted to talk inside or outside the house, and Defendant indicated a preference to speak outside. Tr. at 11.

- Adkins testified as follows with respect to the discussion between himself and Defendant:

> I asked him, I said are you familiar that Ms. Wilcox – I spoke to her two nights ago and what she said, and he said yes, and I said are you going to give a statement, and he wanted to know what was going to happen to Ms. Wilcox, and what was going to happen to himself.
>
> I explained like this, I basically outlined the case for him. I actually went into detail, said this is what I have, this is what I have, but a summation of that is that I had someone saying Ms. – a friend of his said Ms. Wilcox actually planned it, give him the information, he sat as lookout and had recruited someone that did the robbery, and then that person had actually recruited someone who helped him. So essentially Ms. Wilcox planned it, Mr. Rushin was lookout, and two robbers actually did it.
>
> I had another person that was known to him, a female, had called in and said that she actually heard a phone call between Mr. Rushin and Ms. Wilcox, and that Ms. Wilcox knew something about it, given him some of the information that Mr. Rushin was a lookout and had recruited an individual, and she didn't know who that individual was, but she knew he was in the Fulton County Jail –
>
> \*\*\*\*

What I was trying to explain I have people saying that she provided you information. Two nights ago I spoke to her, and she said that's not true, she had nothing to do with it whatsoever, that you – rather than her giving you the information, you had asked some questions and elicited or extracted or something like that, you gleaned the information from her. So if your truthful statement is that she had nothing to do with it, then I don't know that she could be charged, and I explained this. If people are saying she did it, but she absolutely says I had nothing to do with and you say absolutely she had nothing to do with it, I don't know that she could be convicted, and my understanding is if she can't be convicted then a prosecutor is not going to issue charges, but I said ultimately it's not my decision, but I don't think she would be charged if, in fact, you and she are saying she absolutely had nothing to do with it.

Tr. at 11-14.

- Defendant asked Adkins what would happen to him and what sentence he would get, and Adkins indicated that "he would probably be charged and arrested at some point" but could not tell what type of sentence he would receive. Id. at 14.

- Defendant told Adkins that he wanted to "sleep on it" and discuss the matter further with Wilcox, and suggested that Adkins return the next day. Id. at 14-15.

- The next day, January 21, 2017, Adkins called Wilcox and was advised that by Wilcox and then Defendant that he would give a statement to the inspector. Id. at 15.

8

- Once again, upon arriving at Defendant's residence, Adkins asked Defendant whether he preferred to give his statement in his house or in the inspector's vehicle. Defendant chose the vehicle, entered the back seat with Adkins, and Defendant's statement was then recorded. Tr. at 16.

- The interview lasted about twenty minutes. The Magistrate Judge accurately described the interview as follows:

  Seconds into Defendant's recorded statement, Inspector Adkins asked Defendant whether he was in the Ford Explorer "freely and voluntarily," and Defendant responded, "Yeah." Immediately afterwards, Inspector Adkins informed Defendant that he was not under arrest and read Defendant his Miranda rights. Defendant knew he was not under arrest and would not be under arrest at any point on January 21, 2017. Inspector Adkins asked Defendant what was his highest level of education, and Defendant told him the eleventh grade. Inspector Adkins also asked Defendant whether he had a problem understanding anything Inspector Adkins was saying, and Defendant indicated that he did not. Inspector Adkins then said, "Okay, if you don't understand something at any point, tell me to stop . . . please. Again, at any point [if] you want to stop the interview, [or] you wanna leave, that's fine." Inspector Adkins made it clear that he was investigating the 2013 Clarkston Post Office armed robbery and wanted "to get a truthful statement from [Defendant] about what [his] role [was]; who was involved as well as who wasn't involved in that robbery." Defendant initially stated that Wilcox did not have any involvement in the robbery, proceeded to answer Inspector Adkins' questions, and then further described his role as the lookout in the 2013 Clarkston Post Office armed robbery. Other than not wanting to help Inspector Adkins find

9

> the additional robber(s), Inspector Adkins testified that Defendant did not express any concerns during their conversation. The interview lasted approximately twenty minutes, and Defendant was cooperative throughout the interview.

R&R at 8-9 (citing Gov't's Ex. 1-A; Gov't's Ex. 1-B).

Defendant argues that "the entire purpose and context" for the discussion between him and the postal inspectors was that Wilcox would be under suspicion for the bank robbery unless Defendant exonerated her by taking responsibility for the crime. Def.'s Objs. at 2. Because there was no probable cause to arrest Wilcox for the 2013 armed robbery, Defendant asserts that the statement made to him by Adkins was false and coerced Defendant to implicate himself. Id. at 3-5.

Contrary to his contentions, the totality of the circumstances shows that Defendant knowingly and voluntarily made incriminating statements of his own free will and was not coerced into doing so. Wilcox, Defendant's girlfriend, voluntarily provided a statement to Adkins before Defendant ever agreed to give his own statement. There is no evidence that Wilcox was ever threatened with prosecution or arrest prior to her statement. Wilcox then decided to discuss with Defendant his giving a statement as to his involvement in the armed robbery. There is no evidence that Adkins threatened Wilcox with prosecution or arrest unless Defendant made his own statement.

10

When Adkins spoke to Defendant, it was Defendant who chose to provide his statement in the inspector's vehicle rather than his own residence. Defendant agreed to give a statement to Adkins. Adkins explained to Defendant the statements from two sources which implicated both Wilcox and Defendant. It was in response to Defendant's question that Adkins stated that he did not know if Wilcox would be charged if Defendant said she had nothing to do with the crime. It was in response to Defendant's question that Adkins stated that Defendant might be charged and arrested at some point but did not know what kind of sentence he could receive. Defendant then said he would like to "sleep on it" and the next day, after being asked if he wanted to provide a statement, Defendant voluntarily chose to provide a statement in the postal inspector's vehicle, was given his <u>Miranda</u> warnings, and voluntarily waived his <u>Miranda</u> rights. After being asked to provide a truthful statement as to what happened the night of the October 2013 armed robbery, Defendant implicated himself and stated that Wilcox had nothing to do with the crime. Again, this was not proffered based on any promise or threat from Adkins regarding the prosecution of Wilcox. This distinguishes this case from those cited by Defendant. See <u>Lynumn v. Illinois</u>, 372 U.S. 528 (1963) (finding that the misrepresentation by police officers that a suspect would be deprived of state financial aid for her dependent child if she failed to cooperate with authorities

11

rendered the subsequent confession involuntary); Rogers v. Richmond, 365 U.S. 534 (1961) (finding confession was involuntary where the defendant confessed when police chief pretended that if the defendant did not confess his ailing wife would be arrested).

To the extent that Defendant's objections call into question the Magistrate Judge's findings that favor the credibility of Postal Inspector Adkins's undisputed testimony, "[i]n evaluating the factual version of events between the law enforcement officer[ ] and [the defendant], we should defer to the magistrate judge's determination unless h[er] understanding of the facts appears to be 'unbelievable.'" United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citing United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)). The reasons given by the Magistrate Judge in finding Adkins's testimony to be credible are reasonable. See United States v. Emanuel, 440 F. App'x 881, 883 (11th Cir. 2011) (according "substantial deference" to the credibility determinations made by the magistrate judge where the defendant "failed to show that the magistrate [judge]'s understanding of the facts is not plausible or permissible . . . ."). This is not one of those "rare cases" in which the transcript of the evidentiary hearing presents an articulate basis for rejecting the Magistrate Judge's resolution of

credibility. United States v. Marshall, 609 F.2d 152, 155 (5th Cir. 1980)[2]; see also United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) ("This is not the 'rare case' discussed in Marshall, as the transcript here provides no basis to reject the magistrate judge's credibility findings.").

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections [Doc. 34]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 32] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant's Motion to Suppress [Doc. 18] and Supplemented Motion to Suppress Statements [Doc. 27] are **DENIED.**

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trial on September 6, 2018, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the

---

[2] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Report and Recommendation outweigh the right of the public and the right of the defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq*.

**IT IS SO ORDERED** this 16th day of October, 2018.

_____
MARK H. COHEN
United States District Judge